1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EMPIRE FIRE & MARINE INSURANCE CO.,

          Plaintiff,

  v.

ALFREDO DOMINGO, et al.,

          Defendants.

_____/

No. C 06-04631 JSW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

    This matter comes before the Court upon consideration of the motion for summary judgment filed by Plaintiff Empire Fire & Marine Insurance Company ("Empire").  Having considered the parties' papers, relevant legal authority, and the record in this case, and having heard oral argument, the Court HEREBY GRANTS Empire's motion.

**BACKGROUND**

    The following facts are undisputed.  On or about April 8, 2004, Defendant Alfredo Domingo ("Alfredo") rented a 2004 Chevy Suburban ("the Vehicle") from Enterprise Rent A Car of San Francisco ("Enterprise"), at the Enterprise office in Colma, California.  (Declaration of Samuel M. Zaif ("Zaif Decl."), Exs. C (September 21, 2007 Deposition of Alfred Domingo ("Domingo Depo. Vol. II") at 10:25-11:2), E (Rental Agreement), F (Rental Agreement).[1]

---

[1]    Defendants object to Exhibits E and F of the Zaif declaration on the ground that these exhibits are not complete copies of the Rental Agreement.  Exhibit E was marked as Exhibit 4 at Alfredo's deposition on January 31, 2007, and, during that deposition, he acknowledged signing the document.  (Zaif Decl., Ex. D (January 31, 2007 Deposition of Alfredo Domingo ("Domingo Depo. Vol. I") at 42:2-43:3, 62:24-63:6.)  Defendants

1    Later that day, Mr. Domingo's daughter, Cecil Ibay Domingo ("Cecil") went to the Enterprise

2    office in Colma so that she could be added to the Rental Agreement as an additional authorized

3    driver.  (Declaration of Richard B. Vaught ("Vaught Decl."), Ex. 3 (January 31, 2007

4    Deposition of Cecil Ibay Domingo ("C. Domingo Depo.") at 57:18-58:8).)[2]  For purposes of this

5    motion, Empire does not dispute that Cecil was an authorized driver.

6          At the time of the rental, Alfredo purchased the optional Damage Waiver, Personal

7    Accident Insurance, and Supplemental Liability Protection ("SLP").  (Zaif Decl., Exs. E and F.)

8    Empire issued the SLP Policy that gives rise to this dispute.  (*See* Zaif Decl., Ex. G.)[3]  It is

9    undisputed that Alfredo did not ask to see a copy of the SLP Policy, and it also is undisputed

10   that Enterprise did not provide him with a copy of that policy.  Similarly, the undisputed facts

11   demonstrate that Enterprise did not provide Cecil with a copy of the Rental Agreement to

12   review or sign or provide her with a copy of the SLP Policy.

13         The Rental Agreement is four pages long.  (*Id.*, Ex. F.)  The first page consists of

14   information about the vehicle and the signature blocks for the renter, including a signature

15   block that states "I HAVE READ AND AGREE TO THE TERMS AND CONDITIONS ON

16   PAGES 1 THROUGH 4 OF THIS AGREEMENT," which Alfredo signed.  (*Id.*)  The fourth

17   page consists of information about Enterprise locations and advertisements.  (*Id.*)  The terms

18   and conditions are contained on the second and third pages of the Rental Agreement.[4]  There are

19

20   ────────────

21   objections to Exhibit E are OVERRULED.  Because Defendants do not suggest that Exhibit
     F is in any way different from Exhibit E in terms of its language, the Court OVERRULES
22   the objections to Exhibit F.  (*See* Joint Opp. at 7:7-17.)

23         [2]      The Court uses the defendants' first names for purposes of convenience only
     and, where necessary, shall refer to them collectively as the "Domingos."
24

25         [3]      The Empire SLP Policy is attached as Exhibit G to the Zaif Declaration.
     Defendants object to the policy on the ground that it was not delivered to Defendants.  That
26   objection does not relate to the admissibility of the SLP Policy.  Rather, it relates to the issue
     of whether the exclusion should be enforced.  Accordingly, that objection is OVERRULED.
27   Defendants also contend that the SLP Policy is irrelevant.  That objection also is
     OVERRULED.

28         [4]      They also are drafted in a font size that is significantly smaller than the twelve
     point font used for this Order.

United States District Court
For the Northern District of California

twenty (20) sections that comprise the terms and conditions. The caption for each section is underlined and certain provisions of the sections are set forth in capitalized letters. (*Id.*)

There are two sections of the Rental Agreement pertinent to this case. The first, located on the second page of the Rental Agreement, is captioned: <u>3. Limits on Use and Termination of Right to Use.</u> (*Id.* (underscoring in original).) Underneath this heading is the following language: "a. Renter agrees to the following limits on use: ... (4) Vehicle shall not be used to carry passengers in excess of the number of seat belts provided by manufacturer." (*Id.*) Section 3 does not contain any language that references insurance coverage or exclusions from coverage.

The second pertinent provision is Section 16, which is captioned: <u>Optional Supplemental Liability Protection</u>**.** (*Id.* (underscoring in original). That section provides, in part:

> THE PURCHASE OF SUPPLEMENTAL LIABILITY PROTECTION IS OPTIONAL AND NOT REQUIRED IN ORDER TO RENT A VEHICLE.
> <u>SLP Benefits</u>
> Optional Supplemental Liability Protection (SLP) provides Renter with minimum financial responsibility limits as outlined in the applicable motor vehicle financial responsibility laws of the state where Vehicle is operated AND excess insurance provided by Empire Fund Insurance Company which supplies Renter and Authorized Additional Drivers with third-party liability protection with a combined single limit per accident equal to the difference between the minimum financial responsibility limits set forth above and $1,000,000 Combined Single Limit per accident. SLP will respond to third party accident claims that result from bodily injury including death and property damage that arise from the use or operation of Vehicle as permitted in the Rental Agreement. The Empire Fire and Marine insurance policy does not provide coverage for any loss arising from the use or operation of Vehicle in Mexico. SLP is available for an additional charge as stipulated on Page 1 of the Rental Agreement.
>
> SLP is available for $ 9.95 per day.
>
> <u>SLP Exclusions</u>
> For all exclusions, see the SLP policy issued by Empire Fire and Marine Insurance Company. Here are a few key exclusions:
> ...
> (j) Loss arising out of the use of Vehicle when such use is otherwise in violation of the terms and conditions of the Rental Agreement.
> THIS IS A SUMMARY ONLY AND IS SUBJECT TO ALL PROVISIONS, LIMITATIONS, EXCEPTIONS AND EXCLUSIONS OF THE SLP POLICY ISSUED BY EMPIRE FIRE AND MARINE INSURANCE COMPANY. UPON REQUEST A COPY OF THE POLICY IS AVAILABLE FOR REVIEW.

United States District Court

For the Northern District of California

3

1    (*Id.*)

2         The Court shall refer, hereafter, to this exclusion as "Exclusion j."

3         The SLP Policy also contains a section captioned "Exclusions," which provides that

4    "[i]n addition to the exclusions contained in the 'underlying insurance,' *this insurance does not*

5    *apply to the following*: ... 2.  Loss arising out of the use of a 'rental vehicle' when such use is in

6    violation of the terms and conditions of the 'rental agreement.'"  (Zaif Decl., Ex. G at 7

7    (emphasis added).)[5]

8         On April 12, 2004, Cecil was involved in an accident while she was driving the Vehicle.

9    It is undisputed that, at the time of the accident, there were nine people in the vehicle, which

10   only contained eight seatbelts.  (*See* Zaif Decl., Ex. A (Deposition of Michael Clare) at 16:16-

11   23; Domingo Depo. Vol. II at 26:25-28:22.)[6]  Currently, there are two pending lawsuits in the

12   Superior Court of the State of California for the County of Monterey arising from the accident.

13   (Plaintiff's Request for Judicial Notice, Exs. 1, 2.)[7]

14                              **ANALYSIS**

15   **A.    Legal Standards on Summary Judgment Motion.**

16        Summary judgment is proper when the "pleadings, depositions, answers to

17   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

18   genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

20        [5]   The copy of the SLP Policy submitted to the Court is preceded by a
21   certification that it is a true and correct copy of the policy, and the Court denominates that
     certification as page 1 for citation purposes.  Page 2 is a list of the declarations.  Pages 3 and
     4 are an alphabetical listing of endorsements and forms by state.  Page 5 is entitled
22   "Countrywide SI226451."  Page 6 is entitled "Supplemental Rental Liability Insurance
     Policy Provisions."  This portion of the policy is six pages long.  The insuring clause
23   provides that "[t]his policy provides excess auto liability insurance and only applies to a
     'loss' involving 'bodily injury' and 'property damage' caused by an 'accident' and resulting
     from the use of a covered 'rental vehicle.'" (Zaif Decl., Ex. G at 6.)

24

25        [6]   Defendants object to the cited portion of the Clare Deposition on the ground
     that it is leading, lacks foundation and authentication, and is a conclusion.  Defendants'
     objections are OVERRULED, based on the fact that they do not dispute the Vehicle only
26   contained eight seatbelts.  Defendants also object to Plaintiff's Exhibit B, which are police
     reports pertaining to the accident.  Defendants objections to the consideration of those
27   reports for purposes of this motion are SUSTAINED.

28        [7]   Plaintiff's Request for Judicial Notice is GRANTED, in that the Court takes
     judicial notice of the filing of these lawsuits.

**United States District Court**
For the Northern District of California

4

United States District Court
For the Northern District of California

1    matter of law." Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is sufficient evidence

2    for a reasonable fact finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*,

3    477 U.S. 242, 248-49 (1986).  A fact is "material" if the fact may affect the outcome of the case.

4    *Id*. at 248.  "In considering a motion for summary judgment, the court may not weigh the

5    evidence or make credibility determinations, and is required to draw all inferences in a light

6    most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.

7    1997).          A principal purpose of the summary judgment procedure is to identify and

8    dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24

9    (1986).  The party moving for summary judgment bears the initial burden of identifying those

10   portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine

11   issue of material fact.  *Id.* at 323.  Where the moving party will have the burden of proof on an

12   issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

13   than for the moving party.  *Id.*  Once the moving party meets this initial burden, the non-moving

14   party must go beyond the pleadings and by its own evidence "set forth specific facts showing

15   that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The non-moving party must

16   "identify with reasonable particularity the evidence that precludes summary judgment."

17   *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55

18   F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in

19   search of a genuine issue of triable fact").  If the non-moving party fails to make this showing,

20   the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

21   **B.      Plaintiff Is Entitled to Summary Judgment.**

22          Empire filed this Declaratory Judgment action seeking a declaration that the Defendants

23   are not covered by the SLP Policy and that no benefits are due under the SLP Policy.  Empire

24   does not dispute that the claims in the underlying lawsuits would fall within the scope of the

25   insuring provisions of the SLP Policy.  *See Davis v. Farmer's Ins. Group*, 134 Cal. App. 4th

26   100, 105 (2005) (noting that "first step in any insurance coverage dispute is to determine

27   whether the insuring provisions of the policy afforded coverage for the alleged losses").  Rather,

28   Empire contends that Exclusion j applies and, therefore, operates to bar coverage that otherwise

would exist.  Because the material facts are not disputed, the interpretation of these documents is a matter of law for the Court.  *See Haynes v. Farmers' Ins. Exchange*, 32 Cal. 4th 1198, 1204 (2004).

**1.      Governing Insurance Coverage Principles.**

As with any contract, the proper interpretation of an insurance policy is a question of law and follows general principles of contract interpretation.  *TRB Investments, Inc., v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006).  To interpret the meaning of the policy language, courts must first look at the written provisions of the policy.  "If the policy language is clear and explicit, it governs. ... When interpreting a policy provision, we must give its terms their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage."  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999) (internal quotation marks and citations omitted); *see also* Cal. Civ. Code § 1644.  In undertaking this analysis, courts must read limitations on coverage narrowly and insuring provisions "broadly so as to afford the greatest possible protection to the insured."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (quoting *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).  Thus, "an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. ... [A]ny exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect."  *MacKinnon*, 31 Cal. 4th at 648 (*citing State Farm Mut. Ins. Co. v. Jacober*, 10 Cal. 3d 193, 201-02 (1973) (internal quotation marks omitted)).

"A policy provision is ambiguous when it is susceptible to two or more reasonable constructions."  *E.M.M.I. v. Zurich American Ins. Co.*, 32 Cal. 4th 465, 470 (2004).  Any ambiguous terms are interpreted in favor of finding coverage, consistent with the insured's reasonable expectations.  *Id.*  Policy language must be interpreted as a reasonable lay person would read it, not as it might be analyzed by an attorney or insurance professional.  *Id.* at 471; *see also Crane v. State Farm Fire & Casualty Co.*, 5 Cal. 3d 112, 115 (1971).

It also is "a general rule [that] a party is bound by contract provisions and cannot complain of unfamiliarity with the language of a contract."  *Fields v. Blue Shield of California*,

United States District Court

For the Northern District of California

1   163 Cal. App. 3d 570, 578 (1985).  An insured, therefore, generally has a duty to read his

2   policy.  *Id.*  However, the "duty to read is insufficient to bind a party to unusual or unfair

3   language *unless* it is brought to the attention of the party and explained."  *Id.* (emphasis added).

4   Thus, in a standardized insurance contract, entered into between parties of unequal bargaining

5   strength, if there are "limitations or exclusions" to coverage that an insured reasonably could

6   expect, the exclusions or limitations "must be called to the subscriber's attention clearly and

7   plainly before the exclusion will be interpreted to relieve the insurer of the liability for

8   performance."  *Id.* at 579 (citing *Steven v. Fidelity & Casualty Co.*, 58 Cal. 2d 862, 879

9   (1966)).[8]

10          **2.      Exclusion j applies to bar coverage.**

11          Defendants argue that Exclusion j should not be enforced both because it is ambiguous

12   and because it is not conspicuous, plain and clear.

13                  **a.      Exclusion j is not ambiguous.**

14          In order to determine whether Exclusion j is ambiguous, the Court must read the Rental

15   Agreement as it would be "read and understood by a reasonable lay person."  *National Auto. and*

16   *Cas. Co. v. Stewart*, 223 Cal. App. 3d 452, 459 (1990).  Unlike the SLP Policy, the Rental

17   Agreement relies solely on the term "exclusion" to signal to a renter that coverage will not apply

18   to "[l]oss arising out of the use of Vehicle when such use is otherwise in violation of the terms

19   and conditions of the Rental Agreement."  (Zaif Decl., Ex. F.)  Defendants contend that, as set

20   forth in the Rental Agreement, Exclusion j is ambiguous because it does not clearly state that if a

21   renter violates the terms and conditions of the Rental Agreement, the consequence is a total loss

22   of coverage rather than a loss of coverage for extra passengers.  (*See* Joint Opp. at 15:9-18.)

23          With respect to whom coverage applies, the insuring clause of the SLP Policy identifies

24   who is insured and specifies the losses covered.  Thus, as the "insureds" the Domingos are

25   entitled to seek coverage for the losses they suffered as a result of the injuries to the passengers,

26

27          [8]      Defendants assert that the quoted section of *Fields* contains a misprint with
    respect to the *Steven* case.  Specifically, Defendants take issue with the phrase "exceptions
28   and limitations on coverage the insured could reasonably expect."  It is clear from the
    context of the sentence, however, that the *Fields* court indeed was referring to *coverage* that
    an insured reasonably could expect.

to the extent the SLP Policy applies.  In contrast, Exclusion j does not speak to whom the coverage will apply.  Rather it speaks to whether a circumstance exists that will preclude *any* coverage.  Thus, the Rental Agreement identifies as a "key" exclusion "loss arising out of the use of the Vehicle when such use is otherwise in violation of the terms and conditions of the Rental Agreement."  The Rental Agreement also provides that, as part of the terms and conditions of use, the "[v]ehicle shall not be used to carry passengers in excess of the number of seat belts provided by manufacturer."  (Zaif Decl., Ex. F.)  Although the Rental Agreement does not explicitly state that a violation will result in the loss of insurance coverage, the Court concludes that Rental Agreement is not ambiguous either as to the prohibited act or its consequences.

The Court recognizes that the Rental Agreement in this case differs from one at issue in *Hertz Corp. v. Home Ins. Co.*, 14 Cal. App. 4th 1071 (1993).  Unlike the Rental Agreement here, the rental agreement in *Hertz* stated that "if the car is used in violation of the agreement, ... 'All Liability Protection, Including LIS, [Is] Void." *Hertz*, 14 Cal. App. 4th at 1081.  The *Hertz* court considered that language when it analyzed the challenged exclusion and concluded that the exclusion was not ambiguous.  However, the *Hertz* court did not hold such language was required to avoid ambiguity, and this Court cannot say as a matter of law that use of the term "exclusion" alone renders Exclusion j ambiguous as to the consequence of a violation of the Rental Agreement.  To find otherwise, would belie the plain meaning of the term "exclusion" as it would be understood by a reasonable lay person reading an insurance policy.  *See, e.g.,* Black's Law Dictionary at 563 (6th Ed. 1990) ("In insurance policy, 'exclusion,' is provision which eliminates coverage where were it not for exclusion, coverage would have existed.")

Accordingly, the Court concludes, as a matter of law, that Exclusion j is not ambiguous.

**2.       Exclusion j is clear and conspicuous.**

Although exclusion j may not be ambiguous, the Court also must find that it is conspicuous, plain and clear before it can be enforced against the Domingos.  *Haynes*, 32 Cal. 4th

8

United States District Court
For the Northern District of California

at 1204.[9]  To be conspicuous, "the exclusion must be positioned in a place and printed in a form which would attract a reader's attention."  *Ponder v. Blue Cross of So. Cal.*, 145 Cal. App. 3d 709, 719 (1983).  "'Courts have invalidated exclusions under the conspicuous requirement where (1) they are not included under the exclusion section and are placed on an overcrowded page; (2) they are included in a 'General Limitations' section but in a dense pack format; or (3) they are hidden in fine print in a policy section bearing no clear relationship to the insuring clause.'"  *Thompson v. Mercury Cas. Co.*, 84 Cal. App. 4th 90, 95 (2000) (quoting *Merrill & Seely, Inc. v. Admiral Ins. Co.*, 225 Cal. App. 3d 624, 630-31 (1990)).

For example, in the *Ponder* case, the court noted that the exclusionary clause appeared on a page in the contract that contained approximately 2,000 words, in fine print, and that "[t]he section on 'Exclusions from Coverage' alone packs 923 words into its slightly more than 1/3 page."  *Id.* at 722.  Moreover, the exclusion covered a type of condition for which the insured reasonably would expect coverage, but it was "located under a subheading whose ordinary meaning does not encompass the condition purportedly excluded."  *Id.* at 723.  Because the subheading "actually misleads, rather than facilitates comprehension, while the fine print and overall length of the contract discourages discovery of the misplaced exclusionary clause," the court concluded it was not sufficiently conspicuous to be enforced.

---

[9]     Defendants argue that there are material issues in dispute as to whether Alfredo received page 3 of the Rental Agreement.  However, on the first page of the Rental Agreement Alfredo signed a box acknowledging that he had read and understood the provisions of that agreement.  Alfredo's failure to fully read the Rental Agreement is not material, so long as the Rental Agreement "contains sufficiently clear language."  *Hertz*, 14 Cal. App. 4th at 1075 n.2 (rejecting argument that exclusion was inconspicuous because renter did not read rental agreement, when renter, by signing agreement, acknowledged that he read and understood all terms and conditions").

This would be a much easier case if the Court only had to consider the SLP Policy.  However, it is undisputed that neither of the Domingos saw a copy of the SLP Policy, and although the Rental Agreement stated that the SLP Policy was available for review, it is not clear from the record that it was available at the Enterprise Office at Colma.  *Cf. 20th Cent. Ins. Co. v. Liberty Mut. Ins. Co.*, 965 F.2d 747, 754 n.5 (9th Cir. 1992) (noting "apparent incongruity" in ruling where, because parties had not disputed trial court's finding that an exclusion contained in a rental agreement was not conspicuous, the court was upholding an insuring clause in the policy that "was no more conspicuous than limiting clause in the rental agreement," given that policy was located in Florida and not accessible to renter).  Because Exclusion j is contained in both the Rental Agreement and in the SLP Policy, the Court focuses its analysis on whether Exclusion j is conspicuous, plain and clear, as it is set forth in the Rental Agreement.

United States District Court

For the Northern District of California

1    Similarly, in *Schmidt v. Pacific Mut. Life Ins.*, 268 Cal. App. 2d 735 (1969), the court

2    concluded that an exclusion "embedded within a sentence describing benefits to be paid and their

3    duration," was not conspicuous. *Id.* at 740. In reaching its conclusion, the *Schmidt* court noted

4    that the "stress of the paragraph is upon the affirmative promise of benefits to be paid in the event

5    of total disability, rather than upon the negative condition that deprives the buyer of all benefits."

6    *Id.*

7    The *20th Cent. Ins. Co.* case also provides some guidance as to whether an exclusionary

8    clause is sufficiently conspicuous. In that case, the exclusionary clause appeared

9        in the middle of the fourth paragraph on the reverse side of the rental contract on
         a page with extremely small light-colored print. The print is so small that the
10       page on which the clause appears contains more than 2000 words. Furthermore,
         the paragraphs are not preceded by any bold or larger print or headings to
11       indicate to the reader the general substance of their contents.

12   On that basis, the trial court concluded the exclusion was not sufficiently conspicuous, a finding

13   that the parties did not contest on appeal. *20th Cent. Ins. Co.*, 965 F.2d at 752-53. In contrast, in

14   the *Hertz* case, the court noted that the exclusion was located "on the second page of a two-page

15   agreement," which was "formatted in two columns of readable typeface, and the relevant clause is

16   further made conspicuous by its placement in a separate box, with all capital letters being used in

17   the text." *Hertz*, 14 Cal. App. 4th at 1081 (and noting that Hertz also provided customer with a

18   "readable one-page document explaining the LIS policy," which stated that there were exclusions,

19   including using the vehicle in violation of the terms of the rental agreement.")

20   Like the agreement in *Hertz*, the Rental Agreement here is printed in a two-column

21   format. Exclusion j is located at the bottom of the second-page of the Rental Agreement, which

22   apparently is printed on the reverse of page one, and is contained in the 16th of 20 paragraphs, is

23   located well into the general terms and conditions of the Rental Agreement, and is printed in the

24   same small typeface as the rest of the Rental Agreement. However, unlike the exclusion at issue

25   in the *20th Cent. Ins.* case, it is preceded by the heading "SLP Exclusions," and thus, the heading

26   does operate to signal to a reader the importance of that provision.

27   Moreover, Exclusion j is set apart from the summary of the benefits provided by the SLP

28   Policy in the section captioned "SLP Exclusions". Indeed, it also is prefaced by the sentence:

10

United States District Court
For the Northern District of California

1  "For all exclusions, see the SLP Policy issued by Empire[.] Here are a few key exclusions."  (Zaif

2  Decl., Ex. F.)  Further, it is not misleadingly embedded within a provision that emphasizes

3  coverage over exclusions nor is it preceded by a misleading heading, unlike the exclusionary

4  clauses in *Ponder* and *Schmidt*.

5       Further, even though Exclusion j is not set forth on the first page of the Rental Agreement

6  the Court cannot conclude that fact alone would render it ineffective.  *See, e.g., Cal-Farm Ins. Co.*

7  *v. TAC Exterminators, Inc.*, 172 Cal. App. 3d 564, 578 (1985) (finding conspicuous exclusions

8  that were found under a bold-faced section entitled "Exclusions" and which were divided "into

9  two columns on the page so as not to be a dense pack", and noting that "exclusion clauses do not

10 fail merely because of the density of verbiage) (citing *Ponder*, 145 Cal. App. 3d at 722).

11      Accordingly, the Court finds, as a matter of law, that Exclusion j is conspicuous.

12 **b.    Exclusion j is plain and clear.**

13      "To be plain and clear, the substance of the exclusion must be precise and understandable.

14 'To be effective in this context, the exclusion must be couched in words which are part of the

15 working vocabulary of average lay persons.' [Citation]"  *Malcolm v. Farmers New World Life*

16 *Ins. Co.*, 4 Cal. App. 4th 296, 301 (1994) (quoting *Travelers Ins. Co. v. Lesher*, 187 Cal. App. 3d

17 169, 184 (1986)); *see also Ponder,* 145 Cal. App. 3d at 719 ("the substance of the exclusion must

18 be stated in words that convey the proper meaning to persons expected to read the contract")  For

19 the reasons set forth above in section 2.a, the Court concludes as a matter of law that the terms of

20 the exclusion are drafted in language that an average lay person would understand and, thus, as a

21 matter of a law, Exclusion j is plain and clear.

22 **CONCLUSION**

23      For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED.  A

24 separate judgment shall issue, and the Clerk is directed to close the file.

25      **IT IS SO ORDERED.**

26

27 

28

11

Dated: November 26, 2007

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE